UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60313-RUIZ/STRAUSS

CINDY NARAINE,

    Plaintiff,
v.

CITY OF HOLLYWOOD,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before me upon Defendant City of Hollywood's Motion to Dismiss the Complaint ("Motion to Dismiss") (DE 6) seeking to dismiss Plaintiff's complaint for failure to state a claim. The Honorable Rodolfo A. Ruiz II, United States District Judge, referred the Motion to Dismiss to me to take all action as required by law pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Rules of the Local Rules of the Southern District of Florida. (DE 9). I have reviewed the Motion to Dismiss, the Response (DE 7), the Reply (DE 12) and the record and am otherwise duly advised in the premises. For the reasons stated below, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

**I.     BACKGROUND**

This case arises from Plaintiff's prior employment as a Firefighter with Defendant and the termination of Plaintiff's employment on January 16, 2020. (DE 1 at ¶¶ 7-14). On February 8, 2021, Plaintiff filed an eleven-count complaint ("Complaint") against Defendant seeking damages and injunctive relief and bringing the following claims:

| Count I | Race Discrimination Under the Florida Civil Rights Act of 1992 ("FCRA") |
|---|---|
| Count II | National Origin Discrimination Under the FCRA |

1

| Count III | Sex Discrimination Under the FCRA |
|---|---|
| Count IV | Race Discrimination Under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII") |
| Count V | National Origin Discrimination Under Title VII |
| Count VI | Sex Discrimination Under Title VII |
| Count VII | Retaliation Under the FCRA |
| Count VIII | Retaliation Under Title VII |
| Count IX | Sex Discrimination Under the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983") |
| Count X | Race/National Origin Discrimination Under § 1983 |
| Count XI | Retaliation Under § 1983 |

(DE 1).

In the Complaint, Plaintiff alleged that she is a Black, Non-Hispanic female. *Id.* at ¶4. According to Plaintiff, Defendant hired her on July 31, 2015 in an administrative position, and she was promoted on January 27, 2019 to the position of Firefighter. *Id.* at ¶¶7-9. After completing the New Hire Training Program, Plaintiff was transferred to a vacant Fire Prevention Officer I position. *Id.* at ¶10. Plaintiff alleged that she excelled as a firefighter, had no discipline in her file, no warnings or need for employee counseling by her direct line supervisors and was consistently rated "very good" in her performance evaluations. *Id.* at ¶11.

Also relevant to her claims, Plaintiff alleged that her one-year probationary period as a Firefighter was set to expire on January 26, 2020. *Id.* at ¶12. Fire Marshal Chief Chris Del Campo (White) stated in an email one week prior to the expiration of Plaintiff's probationary period that she had satisfied the probationary testing and performance requirements and should be moving forward. *Id.* at ¶¶13, 15. Plaintiff alleged that, on January 16, 2020, in a meeting with the Fire Marshall and Deputy Chiefs Analdys Garcia (light-skinned Hispanic) and Mark Miller (White), which Deputy Chief Garcia led, Plaintiff was advised that pursuant to the direction of Fire Chief

Rudolfo Jurado (light-skinned Hispanic male) she was being terminated effective immediately with the advisement that it did not serve the city's best interest to continue her employment. *Id.* at ¶¶15, 33. Deputy Chief Garcia responded to Plaintiff's request for an explanation as to Defendant's grounds by stating that Plaintiff was being terminated without reason due to her probationary status and advised her that Fire Chief Jurado did not feel that she was a good fit for the agency. *Id.* at ¶16. Further, Deputy Chief Garcia informed Plaintiff that she would be terminated on the spot and would never again be able to obtain employment as a sworn firefighter or EMS Provider in the State of Florida if she did not resign immediately. *Id.* at ¶17. Plaintiff was denied the right to contact her union representative or to take time to consider options before signing a letter of resignation, which she alleged that she signed involuntarily. *Id.* at ¶18. Since Plaintiff's termination, Fire Chief Jurado has been forced to resign. *Id.* at ¶34. Although the Complaint attributed no reason to Fire Chief Jurado's forced termination, Plaintiff alleged that he has a history of violence of against women and has previously had a complaint lodged against him by a Fire Inspector for sex discrimination after the Fire Inspector returned from a maternity leave. *Id.* at ¶33.

Plaintiff retained an attorney who sent a letter to Defendant following her constructive termination alleging that Plaintiff's termination was discriminatory based on her age, sex, and race. *Id.* at ¶21. Afterwards, Plaintiff applied for an open Fire Prevention Officer I position with Defendant. *Id.* at ¶22. In April 2020, Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR") and with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶23. Defendant's position statement ("Position Statement") filed in response to Plaintiff's charge of discrimination alleged for the first time that Plaintiff was terminated for violating five (5) Fire Department rules and regulations, which Plaintiff alleged are

3

pretextual. *Id.* at ¶¶29-30. Defendant's Position Statement centered around an allegation that Plaintiff requested a schedule change outside the chain of command to accommodate school drop off for her two children. *Id.* at ¶31. Plaintiff alleged that her husband, also employed by Defendant, had requested a change in his schedule to accommodate school drop off for their two children. *Id.* Plaintiff alleged that at no time did she request a schedule change. *Id.*

Plaintiff further alleged that she was not offered the option of resuming her previously held position or classification in violation of Defendant's Civil Service Code, which provides at Article IV, Rule 6, Section 3 that "Any employee promoted and later rejected within the prescribed probationary period, shall have the right to resume the position from which said employee was promoted if said position shall be unfilled. If said position shall be filled, said employee shall have the right to revert to the classification from which such employee was promoted." *Id.* at ¶¶19-20.

Plaintiff was not interviewed nor offered the Fire Prevention Officer I position following Defendant's interviews for the position in June 2020. *Id.* at ¶¶24-25. Plaintiff received correspondence from one of the three all-white-male interviewing panel members, Mr. Kittinger, indicating that she was not the best candidate, but Plaintiff was never told that she was not eligible for the position. *Id.* at ¶26. The position was offered to a Mr. Jesse Lapin (White Non-Hispanic male), who Plaintiff alleged was less qualified than she for the position, who had a significant disciplinary history and who failed the background check such that Defendant did not ultimately employ him. *Id.* at ¶27.

Defendant conducted a second round of interviews for the position, and Plaintiff was again not interviewed nor offered the open Fire Prevention Officer I position. Instead, the position was offered to Mr. John Duchrow (White Non-Hispanic male), who Plaintiff alleged is also less qualified than she for the position, who was forced to resign from his previous employer, who had

a history of disciplinary actions and who did not possess Broward County licenses to work as an Inspector. *Id.* at ¶28.

Defendant's Motion to Dismiss seeks dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a). (DE 6 at 1). Defendant argues that Plaintiff made no relevant substantive allegations to plausibly support that her constructive discharge was motivated by her race or national origin nor that Defendant's failure to consider her for reemployment was retaliatory and motivated by Plaintiff's EEOC Charge filing. *Id.* at 2. Furthermore, Defendant argues that Plaintiff failed to exhaust administrative remedies relative to her national origin discrimination claims. *Id.* Defendant also argues that there is only a single speculative allegation pertaining to Plaintiff's sex discrimination claims – that Defendant's decision to terminate Plaintiff's employment was based upon "gender stereotyping" because it was Plaintiff's husband rather than Plaintiff who violated "chain of command" administrative rules. *Id.* Defendant additionally asserts that Plaintiff's claims for punitive damages with respect to her § 1983 claims must be dismissed. *Id.* at 13.

## II.   LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). A complaint's exhibits comprise "part of the plaintiff's basic factual averments." *See F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (citation omitted). Furthermore, exhibits govern when they contradict conclusory or general allegations in the complaint. *Id.* (citations omitted). In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

III. **ANALYSIS**

I find that Plaintiff's pleadings are sufficient to survive a motion to dismiss with respect to claims based upon race and sex discrimination and retaliation. Further, I find that Defendant's Motion to Dismiss is due to be granted relative to the claims of discrimination based upon national origin and the punitive damages relief sought pursuant to § 1983. Because I recommend dismissal

of Plaintiff's national origin discrimination claims in Counts II and V on the merits, I do not reach whether Counts II and V should be dismissed for failure to exhaust administrative remedies.

    **A. <u>Race and Sex Discrimination Under the FCRA, Title VII and § 1983 (Counts I, III-IV, VI, IX and X)</u>[1]**

As discussed below, I find that the Complaint sufficiently states claims for discrimination on the basis of race and sex. Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e *et seq.* states, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 78 Stat. 255, 42. U.S.C. § 2000e-2(a)(1). "Liability in a disparate-treatment case [such as the one here] depends on whether the protected trait . . . actually motivated the employer's decision." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (internal quotation marks and citation omitted). "Generally speaking, a plaintiff can prove disparate treatment . . . by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or . . . by circumstantial evidence using the burden-shifting framework set forth in *McDonnell Douglas* [*Corp. v Green*, 411 U.S. 792 (1973)]." *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016) (internal quotation marks and

---

[1] Because the FCRA was patterned after Title VII, the Eleventh Circuit has found that federal case law construing Title VII applies to claims brought under the FCRA. *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Similarly, "Title VII and § 1983 claims have the same elements where the claims are based on the same set of facts, and in such cases, the claims are subject to the same legal analysis." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (internal quotation marks and citation omitted). The parties do not dispute that the claims in the instant case should be analyzed together. (DE 6 at n.3; DE 7 at n.1). Therefore, I proceed on this basis.

citations omitted) (explaining also that "[a]n allegation of adverse consequences, without more, is not sufficient to state a claim for disparate treatment").[2]

> [The Court has] defined direct evidence as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir.1999) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir.1998)). Therefore, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" constitute direct evidence of discrimination. *Rojas v. Florida*, 285 F.3d 1339, 1342 n. 2 (11th Cir.2002) (quoting *Schoenfeld* [*v. Babbitt*], 168 F.3d [1257,] 1266 [(11th Cir. 1999)]). If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence.

*Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005) (last citation omitted).  Plaintiff's allegations in the case at bar rely upon circumstantial evidence.

"Normally, . . . the essential elements of a claim remain constant through the life of a lawsuit. What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change. So, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).  "To prevail on a claim for discrimination under Title VII based on circumstantial evidence, [a plaintiff] must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing the

---

[2] A plaintiff may also establish a prima facie case through statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989) (discussing three methods of proving a prima facie case of disparate treatment).

elements for making a prima facie case as set forth in *McDonnell Douglas Corp.*, 411 U.S. at 802). "[O]nce a plaintiff establishes a prima facie case of race discrimination through indirect proof, the defendant bears the burden of producing a race-neutral explanation for its action, after which the plaintiff may challenge that explanation as pretextual." *Comcast Corp.*, 140 S. Ct. at 1019.

"Given that the prima facie case operates as a flexible evidentiary standard, [however,] it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  Furthermore, as *McDonnell Douglas* notes, "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations."   411 U.S. at 802, n.13.; *see also Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254, n.6 (1981) (stating in a case alleging sex discrimination that the "standard is not inflexible"). Nonetheless, referencing the *McDonnell Douglas* framework with respect to claims based on circumstantial evidence can be helpful when determining the plausibility of the allegations. *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019).

For example, in the context of an employee terminated for failure to adhere to the employer's policies, a prima facie case under *McDonnell Douglas* has been stated to consist of a plaintiff showing "that (1) he was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) similarly-situated employees outside of the protected class were treated differently". *Hester v. Univ. of Alabama Birmingham Hosp.*, 798 F. App'x 453, 456 (11th Cir. 2020) (affirming summary judgment and citing *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012)).  Prong four refers to a comparator, who "should, generally, have (1) engaged in the same basic conduct (or misconduct), (2) been subject to the same employment policy, guideline, or rule, (3) been under the jurisdiction of the same supervisor,

and (4) shared a similar employment or disciplinary history to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Lewis v. Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019)).

Regarding comparators, the *Lewis* court explained that:

> [T]he Supreme Court has repeatedly (and consistently) included a comparator-evidence assessment—using one formulation or another—as an element of a plaintiff's *prima facie* case. Beginning in *McDonnell Douglas* itself, the Court emphasized that a Title VII plaintiff—there bringing a failure-to-hire claim—carries his prima facie burden "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and"—importantly here—"(iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*Lewis,* 918 F.3d at 1221 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802 (explaining that the defendant employer continued to seek applicants from plaintiff's trade after rejecting plaintiff for rehire while acknowledging that plaintiff's work performance during tenure with defendant had been satisfactory)). Therefore, "at the prima facie stage[,] the Supreme Court [in *McDonnell Douglas*] accepted as comparators any white mechanic who had been rehired." *Lewis*, 918 F.3d at 1238 (Rosenbaum, J., concurring in part and dissenting in part).

The elements to make out a prima facie case have also been stated in a manner that focuses on comparators who replace a plaintiff. For example, the Court in *Jackson v. City of Killeen* stated that "[t]he formulation for the establishment of a prima facie case, set forth in *McDonnell Douglas*, has been applied to discharge cases in this circuit since *Marks v. Pratt Co.*, 607 F.2d 1153, 1155 (5th Cir.1979). Essentially, plaintiffs must show that they are members of a protected class who, while qualified for their jobs, were discharged and replaced with nonminorities." 654 F.2d 1181, 1183 (5th Cir. 1981)[3] (addressing elements of a prima facie case for discrimination where a black

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

female was allegedly discharged with cause).  Similarly, in *Cuddeback v. Fla. Bd. of Educ.*, the court held that "[t]o establish a prima facie case of discriminatory discharge, the plaintiff must show that she (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class." 381 F.3d 1230, 1235 (11th Cir. 2004).

Accordingly, "Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Jackson*, 654 F.2d at 1186.  Indeed, "discrimination is a comparative concept—it requires an assessment of whether 'like' (or instead different) people or things are being treated 'differently.'" *Lewis*, 918 F.3d at 1223.

Applying the above legal principles and taking the Complaint's allegations in the light most favorable to Plaintiff, I find that Plaintiff's allegations pertaining to race and sex discrimination are sufficient to survive a motion to dismiss.[4]  Plaintiff alleged the first element of a prima facie case by stating that she is a member of a protected class – a Black Non-Hispanic female – encompassing her race and sex discrimination claims.[5] (DE 1 at ¶4).

---

[4] Plaintiff's argument regarding the sufficiency of her sex discrimination allegations centers around the idea that Fire Chief Jurado must have engaged in gender stereotyping in order to arrive at the proffered reason for Plaintiff's firing.  I find this allegation is not sufficient, standing alone, to avoid dismissal but that it is potential circumstantial evidence of discrimination (in combination with the other alleged facts forming the prima facie case discussed *infra*) and/or potential evidence to eventually demonstrate pretext.  The *Akouri* case cited by Plaintiff as authority in support of her gender stereotyping argument addresses direct evidence of discrimination and not the circumstantial facts that Plaintiff relies upon.  (DE 7 at 12).  Plaintiff's allegation is not that a blatant comment (as described in *Akouri*) was made demonstrating discrimination but rather that a statement was made suggesting, but not proving, discriminatory motive.  *Akouri*, 408 F.3d at 1347-48 (explaining direct v. circumstantial evidence).

[5] As discussed further below, I find that Plaintiff's allegation that she is a "Non-Hispanic," who was qualified for the job but was fired by Hispanics, without more, is insufficient to state a claim for discrimination on the basis of national origin.

As to the second element, Plaintiff alleged that she is qualified for the job. *Id.* at ¶11. Indeed, Plaintiff averred that she was promoted to the position of Firefighter in January 2019 after working for Defendant as an administrative assistant since July 2015, that she excelled in the Firefighter role, that she had no disciplinary actions in her file and that her performance evaluations consistently rated her as "very good." *Id.* at ¶¶7-11. Plaintiff also asserted that Fire Marshal Chief Del Campo told her in an email one week prior to the January 26, 2020 expiration date of her probationary period as a Firefighter that she had satisfied the probationary testing and performance requirements and should be moving forward. *Id.* at ¶¶12-13. All of these facts are indicia that Plaintiff was qualified for the job.

With respect to the third element – that Plaintiff was terminated – Plaintiff alleged that she was surprisingly subjected to a constructive discharge when non-Black, male superiors in the chain of command told her, on January 16, 2016, that her probation was being terminated effective immediately under the direction of Fire Chief Jurado (light-skinned Hispanic male) and that she had to immediately resign in lieu of termination to avoid being precluded from ever again working as a Florida firefighter. *Id. at* ¶¶14-18, 33. Accordingly, Plaintiff sufficiently alleged the third element.

Case law suggests that the fourth element may be satisfied by allegations that Plaintiff was "replaced by someone outside the protected class," *Cuddeback*, 381 F.3d at 1235, or that "similarly-situated employees outside of the protected class were treated differently." *Hester*, 798 F. App'x at 456. *See also Maynard*, 342 F.3d at 1289. Here, Plaintiff sufficiently alleged the former. Specifically, Plaintiff alleged that Defendant terminated her and stated that the termination, which was at the behest of since-terminated Fire Chief Jurado, was "without reason" due to her probationary status. (DE 1 at ¶¶15-16, 33-34). Plaintiff further alleged that Defendant's

all-White male interviewing panel filled the open position created by Plaintiff's termination with less qualified non-Black male employees (once unsuccessfully because the chosen candidate did not pass the background check) while communicating to Plaintiff that she could not be rehired into the position because "she was not the best applicant." (DE 1 at ¶¶19-20, 22, 24-28, 40, 63; DE 7 at 7). Thus, recognizing that Plaintiff is not required to prove a prima facie case at the motion to dismiss stage, I conclude that Plaintiff's allegations pertaining to the elements of a prima facie case are adequate for making a reasonable inference that Defendant's discharge of Plaintiff was motivated by Plaintiff's race and gender and sufficient to raise a right of relief above the speculative level. *Raytheon Co.*, 540 U.S. at 52; *Twombly*, 550 U.S. at 555.

### B. National Origin Discrimination Claims (Counts II, V and X)

For reasons stated below, I find that Plaintiff fails to state a claim with respect to national origin discrimination. Although Plaintiff attempted to allege a national origin-based claim on the basis that she is "Non-Hispanic," she did not allege any substantive facts that she was discriminated against based upon her being Non-Hispanic. The only facts that Plaintiff alleged regarding national origin are that Plaintiff is Non-Hispanic and that she was terminated by Hispanic supervisors. While Plaintiff established the first three elements of a claim – that she is a member of a protected class (Non-Hispanic), who was qualified to do the job and who was terminated (subjected to an adverse employment action) – she alleged no facts to support the fourth element to demonstrate that she was treated differently on the basis of national origin. *Cuddeback*, 381 F.3d 1230, 1235 (11th Cir. 2004). Indeed, while claiming discrimination on grounds that she is Non-Hispanic, Plaintiff alleged that Defendant attempted to replace her, and eventually succeeded in replacing her, with candidates who were also Non-Hispanic. (DE 1 at ¶¶27-28) (discussing the White, Non-Hispanic males to whom Defendant offered the Fire Prevention Officer I position).

Thus, Plaintiff fails to sufficiently allege element four because the only comparative treatment she alleged relates to the hiring efforts of Defendant's all-White (Non-Hispanic) male panel to replace her with White (Non-Hispanic) males. The mere fact that Defendant was terminated by Hispanic supervisors is insufficient, standing alone, to make a claim for discrimination on the basis of national origin because this fact, without more, fails to demonstrate how Plaintiff was treated differently from others on the basis of her Non-Hispanic origin. Accordingly, I find that Counts II and V should be dismissed in their entirety and that Count X should be dismissed to the extent that it brings a discrimination claim on the grounds of national origin.

### C. Retaliation Under the FCRA, Title VII and § 1983 (Counts VII, VIII and XI)

For reasons stated herein, I find that Plaintiff sufficiently alleges the necessary elements to state a claim for retaliation. "Title VII prohibits an employer from retaliating against 'any ... employee[ ] ... because [s]he has opposed any practice made an unlawful employment practice' by Title VII, 'or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (quoting 42 U.S.C. § 2000e-3(a)). "Title VII also prohibits retaliation against former employees." *Stewart v. Jones Util. & Contracting Co. Inc.*, 806 F. App'x 738, 742 (11th Cir. 2020) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

"To state a viable claim for retaliation under . . . Title VII . . ., a plaintiff must plead facts that plausibly support a finding that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and adverse action." *Stewart*, 806 F. App'x at 742 (analyzing a plaintiff's claim under Title VII and the Americans with Disabilities Act together because the provisions in each are

similar). "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (citing, in part, *Bechtel Const. Co. v. Sec'y of Lab.*, 50 F.3d 926, 934 (11th Cir. 1995) for the proposition that "[p]roximity in time is sufficient to raise an inference of causation").

Here, Defendant does not dispute that Plaintiff engaged in statutorily protected expression – the first element in stating a claim for retaliation. *Stewart*, 806 F. App'x at 742. By the very terms of Title VII, making a charge of discrimination is statutorily protected activity, and Plaintiff alleged that she made a charge of discrimination through her attorney to Defendant directly and then to the EEOC. 42 U.S.C. § 2000e-3(a); *see also Gogel*, 967 F.3d at 1135 (finding that the filing of a "first EEOC charge constituted protected conduct"). Thus, I find Plaintiff sufficiently alleged the first element.

Defendant also does not dispute that Plaintiff suffered harm by not being rehired after, as Defendant acknowledges, it terminated her "based on its belief that Plaintiff violated its 'chain of command' rules." (DE 6 a n.7). Thus, I conclude that Plaintiff sufficiently alleged that "she suffered an adverse employment action," which satisfies the second element required to state a claim for retaliation. *Stewart*, 806 F. App'x at 742.

Defendant argues, however, that Plaintiff's allegations – that Defendant failed to consider her for reemployment in retaliation for complaining about, and then filing a charge of, discrimination – are "completely conclusory." Defendant specifically argues that Plaintiff's allegations are insufficient to establish the third element – a causal link between the alleged adverse employment action and Defendant's alleged retaliatory conduct. (DE 6 at 12-13). According to

15

Defendant, Plaintiff's allegations point to a lack of retaliatory conduct by Defendant because it "had just terminated Plaintiff on January 16, 2020 based upon its belief that Plaintiff violated its 'chain of command' rules, and just one month later, on February 19, 2020, Plaintiff applied for [the same] FPO I position." DE 6 at n.7; DE 12 at 9-10. Defendant argues that Plaintiff made no "plausible" allegation that it would have rehired an employee it fired one month earlier but for the fact that the employee made a charge of discrimination with the EEOC. (DE 12 at 9-10). Defendant also suggests that Plaintiff's application for the FPO I position was an attempt "to frame any action occurring regarding her employment thereafter as retaliatory." *Id.* at 10 (quoting also from *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) that "Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint").

Notwithstanding Defendant's arguments to the contrary, I do not find that Plaintiff's allegations are conclusory or lack plausibility. Rather, Plaintiff articulates facts sufficient to state a claim at the pleading stage. Defendant makes a potentially logical argument that the City would not have re-hired an employee it fired one month earlier regardless of whether that employee engaged in protected activity following that firing. However, the logic of Defendant's argument hinges on the assumption that Defendant had a valid, enduring reason for terminating Plaintiff in the first place. Yet, based on Plaintiff's allegations, Plaintiff was told initially that her termination was without reason and then later understood that Defendant terminated her based on the mistaken belief that she violated the chain-of-command by requesting a schedule change. Certainly, it is plausible that Defendant had time between terminating Plaintiff on January 16, 2020 and Plaintiff's application for rehire on February 19, 2020 (or the interviews for the position in June 2020) to determine that it had made a mistake in terminating Plaintiff on the basis that she violated the

chain-of-command. Further, the Complaint alleged that Plaintiff excelled as a firefighter and was definitely not on "thin ice." (DE 1 at ¶¶11, 13-15, 21-22; DE 1-1 at 3). Yet, Defendant spent more months beyond the one-month period between Plaintiff's termination and application for rehire pursuing other allegedly less-qualified candidates for the position while communicating to Plaintiff that "she was not the best applicant" *after* Plaintiff's attorney made a complaint to Defendant on February 20, 2020 and *after* Plaintiff's EEOC Charge in April 2020. (DE 1-1 at 1-2; DE 1 at ¶¶21-28). Such allegations are sufficient to make a reasonable inference that Plaintiff did not rehire her, despite having erred in terminating her, because she engaged in protected activity by making a complaint through her attorney and by filing a formal charge of discrimination. *Brungart*, 231 F.3d at 799 (citing, in part, Bechtel, 50 F.3d at 934)). Thus, Plaintiff's allegations satisfy the third element required to state a claim for retaliation. While Defendant may ultimately succeed in demonstrating that its actions in not rehiring Plaintiff were based on an incorrect belief that Plaintiff had violated its chain of command rules or were based on other non-discriminatory grounds, the Court views the allegations in the light most favorable to Plaintiff at the motion to dismiss stage of the proceedings. *Hishon*, 467 U.S. at 73; *Am. United Life Ins. Co.*, 480 F.3d at 1057. Here, for the reasons discussed above, Plaintiff has articulated facts sufficient to infer a link between Plaintiff's protected conduct and the Defendant's decision to not interview or rehire her. Accordingly, I find that the Motion to Dismiss should be denied with respect to Counts VII, VIII and XI.

### D. Punitive Damages Pertaining to § 1983 Claims (Counts IX, X, and XI)

Plaintiff acknowledges that punitive damages are not permissible in connection with her § 1983 claims as Defendant argues. (DE 6 at 13-14; DE 7 at n.5). *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages

under 42 U.S.C. § 1983."). Therefore, Plaintiff stipulates to dismissal or striking of the punitive damage prayers in Counts IX, X and XI. (DE 7 at n.5). Accordingly, the Motion to Dismiss should be granted with respect to Plaintiff's requests for punitive damages in Counts IX, X and XI.

### IV.   CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss (DE 6) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, I recommend as follows:

1. That the Motion to Dismiss be **DENIED** as to Counts I, III-IV, VI-IX and XI;

2. That the Motion to Dismiss be **DENIED** as to Count X to the extent that it is based upon Race Discrimination;

3. That the Motion to Dismiss be **GRANTED** as to Counts II and V;

4. That the Motion to Dismiss be **GRANTED** as to Count X to the extent that it is based upon National Origin; and

5. That the Motion to Dismiss be **GRANTED** as to the punitive damages sought by Plaintiff in Counts IX, X and XI.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE** and **SUBMITTED** in Fort Lauderdale, Florida, this 3rd day of June 2021.

*[signature]*
Jared M. Strauss
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Rodolfo A. Ruiz, II

Counsel of record