**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CV-60313-RAR**

CINDY NARAINE,

      Plaintiff,

v.

CITY OF HOLLYWOOD,

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court upon Defendant's Motion for Summary Judgment [ECF No. 49] ("Motion"), filed on April 12, 2022.  Having reviewed the Motion, Plaintiff's Response in Opposition [ECF No. 55] ("Response"), Defendant's Reply to Plaintiff's Opposition [ECF No. 63] ("Reply"), the record, applicable law, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Although lengthy, the Court finds it necessary to recount all facts alleged in the Amended Complaint in order to properly detail the record.  Unless noted, the facts cited are not in dispute.

**I.  Plaintiff's Employment History**

Plaintiff is a black female.  [ECF No. 56] ("PSOMF") ¶ 70.  Plaintiff was initially hired by the City of Hollywood ("City" or "Defendant") as an Administrative Assistant II in the City's Information Technology ("IT") Department.  [ECF No. 48] ("DSOMF") ¶ 1.  On January 27, 2019, Plaintiff began work at the Hollywood Fire Rescue & Beach Safety Department.  *Id.* ¶ 3.  Plaintiff

was the only firefighter in the Fire Department who was employed elsewhere within the city immediately before beginning work at the Fire Department.  *Id.* ¶ 11.  As a new employee of the Fire Department, Plaintiff was subject to a one-year probationary period, beginning on January 27, 2019.  *Id.* ¶ 13.  On January 16, 2020, during the one-year probationary period, Plaintiff resigned in lieu of being terminated.  *Id.* ¶ 15.  Prior to her termination, the City had no performance issues with Plaintiff.  PSOMF ¶ 74.

## II.  Meeting with City Manager Ishmael

On November 7, 2019, Plaintiff and her domestic partner, Nicholas Gasbarro (also a city employee) attended a meeting with City Manager Wazir Ishmael.  DSOMF ¶ 22.  Plaintiff and Gasbarro have minor children.  *Id.* ¶ 24.  At the time of the meeting, Plaintiff was on-duty, and in her fire uniform.  *Id.* ¶ 23.  The purpose of the meeting was to request work hour accommodations for Gasbarro to address Plaintiff and Gasbarro's childcare needs.  *Id.* ¶ 24–25.[1]  The next morning, Gasbarro sent an email to the City Manager, thanking him for "giving us [meaning himself and Plaintiff] the opportunity to discuss the hardship we as a family and employees of the City are facing."  *Id.* ¶ 27.  Plaintiff did not request permission from anyone in the Fire Department to attend the meeting, did not inform anybody that she would be attending the meeting, and instead asked a field training officer if she could take a "work break."  *Id.* ¶ 28.

Shortly after the meeting took place, Chief Jurado became aware of the meeting.  DSOMF ¶ 29.  He ordered Deputy Chief Analdy Garcia to investigate.  *Id.*  On November 21, 2019, Plaintiff was called to a meeting with Deputy Chief Garcia, Fire Marshall Del Campo, and Deputy Fire

---

[1] Plaintiff disputes that she asked for any type of workplace accommodation.  PSOMF ¶ 25.  While it is undisputed that Plaintiff was not asking for an accommodation as to her own hours, it was the City Manager's impression that both Gasbarro and Plaintiff "were asking for help" regarding their childcare situation.  [ECF No. 48-7] ("Ishmael Dep.") at 31:4–5.

Marshall Castano to determine Plaintiff's involvement in contacting the City Manager. *Id.* ¶ 31. It is the City's position that Plaintiff denied having any contact with the City Manager to Deputy Chief Garcia on two separate occasions. *Id.* ¶ 32. Plaintiff contends that she answered the questions she was asked truthfully.[2] *Id.* ¶¶ 37, 39. In her deposition, Plaintiff admitted that she attended the meeting, but since it was her partner's meeting, she sat quietly. *Id.* ¶ 38.

### III. Plaintiff's Termination

At the conclusion of the investigation, Deputy Chief Garcia recommended that Plaintiff be terminated for two reasons: (1) her "egregious" breach of command and (2) her untruthful denial of attending the meeting with the City Manager. DSOMF ¶ 44. In light of Deputy Chief Garcia's recommendation and issues relating to Plaintiff's fringe benefits[3], Chief Jurado made the decision to terminate her. *Id.* ¶ 45.[4] In making that decision, he met with City Manager Wazir Ishmael, Deputy City Manager George Keller, Human Resources Director Tammie Hechler, Human Resources Administrator Kathy Lopez-Negron, and Deputy City Attorney Alan Fallik. *Id.* ¶¶ 45–47.

---

[2] The issue of whether Plaintiff told Deputy Chief Garcia that she attended the meeting is highly disputed. Apart from one exchange cited by Plaintiff, Deputy Chief Garcia made clear throughout his deposition that Plaintiff was not truthful with him as to whether she contacted the City Manager's office or attended a meeting regarding scheduling issues. [ECF No. 64] ("City's Resp. to Add't. Facts") ¶ 88. The City goes so far as to say that any suggestion in the transcript to the contrary is likely a transcription error. *Id.*

[3] Prior to the meeting with the City Manager, Plaintiff had raised concerns related to benefits she had accrued in the IT department not being transferred to her new role at the Fire Department. DSMOF ¶ 16. When she was not satisfied with the City's explanation for why these benefits did not transfer, Plaintiff continued to raise these issues with the City's Human Resources Department. *Id.* ¶ 19. The City represents that these continued inquiries were burdensome on Chief Jurado's time. *Id.* ¶ 20.

[4] Plaintiff contends that Chief Jurado made the decision to fire Plaintiff at the onset of the investigation, and she cites to Deputy Chief Garcia's deposition for support. PSOMF ¶ 45. However, the lines cited do not support that proposition. Deputy Chief Garcia only acknowledged that Chief Jurado had concluded Plaintiff had violated the chain of command—not that Chief Jurado had already decided to terminate Plaintiff. *See* [ECF No. 64-1] ("Garcia Dep.") at 18:12–16.

On January 16, 2020, Deputy Chief Garcia, Deputy Chief Miller, and Fire Marshall Del Campo met with Plaintiff in connection with the termination of her employment.  DSMOF ¶ 51. In that meeting, Plaintiff was told that "it did not serve the city's best interest to continue her employment" and that "Chief Jurado felt she was 'not a good fit for the agency.'"  *Id*. ¶ 52.[5] Plaintiff was not provided previous notice of the termination.  City's Resp. to Add't. Facts ¶ 90. She was told that there were benefits to resigning in lieu of being fired, and that if she did not resign, she would be fired.  *Id*.  Plaintiff signed a memorandum of resignation and was not presented with a letter of termination.  *Id*.

### IV.  Plaintiff Reapplies for Position in the City's Fire Department

In February 2020, Plaintiff "reapplied" for the same position within the Fire Department that she was terminated from.  DSMOF ¶ 58; Compl. ¶ 22.  In April 2020, Plaintiff filed her Charge of Discrimination with the FCHR and the EEOC.  Compl. ¶ 23.  In June 2020, the City conducted interviews for the vacant position.  *Id.* ¶ 24.  The City deemed Plaintiff ineligible to rehire for the position and accordingly, she was not hired.  DSMOF ¶ 60.

### V.  Lack of Discrimination in the Workplace

Plaintiff never witnessed any act of discrimination against any employee of the Fire Department.  *Id*. ¶ 61.  Plaintiff was never subject to a racist remark while working at the Fire Department.  *Id*. ¶ 62.  Plaintiff was never the subject of a sexist comment while working at the Fire Department.  *Id*. ¶ 63.  Neither Chief Jurado nor Deputy Chief Garcia ever made a disparaging comment about Plaintiff.  *Id*. ¶ 64.  Plaintiff overheard one comment she believed to be sexist regarding another female firefighter and whether that female firefighter should stay home to raise her children.  *Id*. ¶ 65.

---

[5] Plaintiff maintains this is undisputed only so far as to agree that she received no reason for her termination.

## PROCEDURAL HISTORY

On February 8, 2021, Plaintiff filed a Complaint against the City of Hollywood alleging (I) race discrimination under the Florida Civil Rights Act of 1992 ("FCRA"); (II) national origin discrimination under the FCRA; (III) sex discrimination under the FCRA; (IV) race discrimination under Title VII; (V) national origin discrimination under Title VII; (VI) sex discrimination under Title VII; (VII) retaliation under the FCRA; (VIII) retaliation under Title VII; (IX) sex discrimination under 42 U.S.C. § 1983; (X) race/national origin discrimination under § 1983; and (XI) retaliation under § 1983.  Shortly thereafter, the City of Hollywood filed a Motion to Dismiss [ECF No. 6] ("Mot. to Dismiss"), which the Court granted in part and denied in part [ECF No. 21]. The Court denied the Motion to Dismiss outright as to Counts I, III-IV, VI-IX, and XI, and denied the Motion as to Count X to the extent that count was based on race discrimination.  The Court granted the Motion to Dismiss as to Counts II, V, and X to the extent such counts were based upon national origin discrimination.  Additionally, the Motion to Dismiss was granted as to the punitive damages sought by Plaintiff under Counts IX, X, and XI.

Therefore, the Court is left to consider the following remaining counts: race discrimination in violation of the FCRA (Count I), Title VII (Count IV), and § 1983 (Count X); sex discrimination in violation of the FCRA (Count III) and Title VII (Count VI); and (c) retaliation in violation of the FCRA (Count VII), Title VII (Count VIII), and § 1983 (Count XI).

## LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252.

If there are factual issues, summary judgment must be denied, and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). Further, when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* (alteration added and citation omitted).

## ANALYSIS

### I. Plaintiff's Motion to Strike the Declarations of Chief Jurado and Deputy Chief Garcia

Because a motion for summary judgment requires the Court to assess record evidence, the Court must first decide what evidence should be *in* the record. While not framed as a motion, Plaintiff asks the Court to strike the declarations of Chief Jurado and Deputy Chief Garcia in her Response. Resp. at 5. She argues that both declarations are sham affidavits because they "are completely contradicted by their respective deposition testimony." *Id.*

When considering a motion for summary judgment, "[a] district court may disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact." *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d

1369, 1371 (S.D. Fla. 2014) (citing *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 n.6 (11th

Cir. 2012)).  "[B]efore disregarding an affidavit as a sham, there must be an unexplained inherent

inconsistency between the deposition testimony at issue and the affidavit."  *Houlihan Lokey*

*Howard & Zukin Capital, Inc. v. Protective Grp., Inc.*, 506 F. Supp. 2d 1230, 1245 (S.D. Fla.

2007).  "The . . . sham affidavit rule applies with equal force to declarations."  *See Calvo*, 63 F.

Supp. 3d at 1372.

Contrary to Plaintiff's representations, the declarations at issue do not contain unexplained

inherent inconsistences when compared to the deposition testimony.  Indeed, Plaintiff does not

point out any discrepancies between Chief Jurado's deposition and declaration.  *See* Resp. at 5.

Therefore, the Court finds no reason to disregard his deposition.  As for Deputy Chief Garcia's

declaration [ECF No. 48-12] ("Garcia Dec."), Plaintiff contends it should be disregarded because

it contradicts his deposition.  Resp. at 5.  Specifically, Deputy Chief Garcia admitted in his

deposition that Plaintiff told him she attended the meeting with the City Manager—but in his

declaration, Deputy Chief Garcia states that Plaintiff denied attending the meeting.  *See* Resp. at

5, *see also* Garcia Dec. at 1.  But there is an explanation for this purported discrepancy.  *See* City's

Resp. to Add't. Facts ¶ 88 (explaining that the deposition transcript was incorrectly transcribed

and filing an errata sheet to that effect).  Therefore, there are no unexplained inherent

inconsistencies, and the Court will not disregard Deputy Chief Garcia's declaration as a sham.

## II.  Title VII, FCRA, and § 1983 Discrimination

Under Title VII, "it is unlawful for an employer 'to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e-2(a)(1)).[6]

The Eleventh Circuit has developed a framework for adjudicating motions for summary judgment in cases involving Title VII discrimination. Discrimination can be proven through direct or circumstantial evidence. *Hinson v. Clinch Cnty., Ga. Bd. Of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000). Direct evidence is evidence that, "if believed, proves the existence of a fact without inference or presumption. Only the most blatant remarks whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (internal citations and quotations omitted).

In single motive cases where there is no direct evidence of discrimination, as is the case here, there are two principal ways in which a plaintiff may establish such intent through circumstantial evidence. The first, and most common, is by using the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As explained by the Eleventh Circuit:

> When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably. If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate,

---

[6] The parties do not dispute the FCRA is construed in conformity with Title VII. *See Matias v. Sears Home Improvement Prod.*, 391 F. App'x 782, 785 (11th Cir. 2010); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 925 (Fla. 4th DCA 2007); *McCaw Cellular Commc'n of Florida, Inc. v. Kwiatek*, 763 So. 2d 1063, 1065 (Fla. 4th DCA 1999). Similarly, "Title VII and § 1983 claims have the same elements where the claims are based on the same set of facts, and in such cases, the claims are subject to the same legal analysis." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (internal quotation marks and citation omitted). Accordingly, the Court will address Plaintiff's Title VII claims in conjunction with her FCRA claims and § 1983 claims.

> nondiscriminatory reason for its actions. Finally, should the
> defendant carry its burden, the plaintiff must then demonstrate that
> the defendant's proffered reason was merely a pretext for unlawful
> discrimination, an obligation that merges with the plaintiff's
> ultimate burden of persuading the factfinder that she has been the
> victim of intentional discrimination.

*Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (*en banc*) (internal citations and quotations omitted).

However, the *McDonnell Douglas* framework "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion." *Smith*, 644 F.3d at 1328. Therefore, if the *McDonnell Douglas* path is foreclosed, a plaintiff may nevertheless survive summary judgment if he can "present[] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Johnson v. Airbus Def. & Space Inc.*, 858 F. App'x 304, 310 (11th Cir. 2021) (citing *id.*) (internal quotations omitted). Under the *Smith* framework, "a triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a *convincing mosaic* of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (alterations omitted) (emphasis added). A "convincing mosaic" is established by "pointing to evidence that demonstrates (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly-situated employees, and (3) pretext." *Johnson*, 858 F. App'x at 310 (internal citations omitted).

The case at bar is completely devoid of any evidence of direct discrimination. *See Fernandez*, 961 F.3d at 1156. Plaintiff provides no evidence of any statements regarding her protected status made by her supervisors or any other employee at the City. Thus, due to the lack of direct evidence, to survive summary judgment, Plaintiff must establish a *prima facie* case under *McDonnell Douglas*, or point to evidence of a convincing mosaic of discrimination under *Smith*.

### III.  Plaintiff Cannot Establish Pretext for Discrimination

Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of discrimination by showing: "(1) that [she] belongs to a protected class, (2) that [she] was subjected to an adverse employment action, (3) that [she] was qualified to perform the job in question, and (4) that [her] employer treated 'similarly situated' employees outside [her] class more favorably." *Id.* at 1220–21.  For purposes of the Motion, the City concedes that Plaintiff has put forth a *prima facie* case of disparate treatment discrimination.  Reply at 1.

As the City concedes that Plaintiff has established a *prima facie* case, the City must meet its burden of "articulat[ing] a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Importantly, "[b]ecause the employer's burden is one of *production*—not persuasion—the employer 'need not persuade the court that it was *actually* motivated by the proffered reason[.]'" *Kidd v. Mondo Am. Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013) (emphasis in original) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)).  The City's reason "need only be specific enough so that the plaintiff is afforded a full and fair opportunity to demonstrate pretext." *Id.* (internal quotations and citation omitted).

Here, the record contains legitimate, nondiscriminatory reasons for the adverse employment actions taken by the City against Plaintiff (*i.e.*, her termination).  The City articulates two clear reasons for Plaintiff's termination: her violation of the chain of command and her subsequent denial of the conduct at issue.  Mot. at 9.  In short, Plaintiff was part of a meeting with the City Manager, in which Plaintiff and her partner discussed accommodations for childcare. Mot. at 10.  After the meeting occurred, and after she was asked questions about that meeting, she allegedly omitted sharing (or, in other words, was not forthcoming) that she had attended the

meeting with her partner. DSMOF ¶ 31–39. Based on these two alleged violations of workplace rules, the City has produced a 'clear and reasonably specific' non retaliatory basis for its actions, and the burden shifts back to Plaintiff to show pretext. *See Lewis*, 918 F.3d at 1221 (citing *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 253); *see also Collogan v. G4S Secure Sols. (USA) Inc*., No. 8:16-CV-556-T-17AEP, 2017 WL 10276704, at *5 (M.D. Fla. Aug. 11, 2017) ("Once the legitimate, non-discriminatory reason is advanced, the *prima facie* case is rebutted, and all presumptions drop from the case.").

To show pretext, an employee must confront the employer's seemingly legitimate reason for the adverse employment action "head on and rebut it." *Id.* at 1206 (citation and internal quotations omitted); *see also Calicchio v. Oasis Outsourcing Grp. Holdings*, No. 21-12854, slip op. (11th Cir. Jul. 15, 2022) (holding rebuttal evidence must lead "a reasonable factfinder [to] find the [stated legitimate reason] unworthy of credence."). A plaintiff "cannot succeed by simply quarreling with the wisdom of that reason." *Id.* (citation and internal quotations omitted). A plaintiff may demonstrate an employer's reasons were pretextual by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (citation and internal quotations omitted). Critically, "[a] reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (internal quotations omitted). In sum, "[w]e do not answer whether employment decisions were prudent or fair, but only whether unlawful discriminatory animus motivated a challenged employment

decision." *Shi v. Montgomery*, 679 F. App'x 828, 832 (11th Cir. 2017) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).  And an employee's violation of a company's work rules may constitute a legitimate, non-discriminatory reason for termination. *Shi*, 679 F. App'x at 833 (citing *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1563 (11th Cir. 1987)).

With this analytical framework in mind, the Court must determine whether Plaintiff has established pretext by showing that (1) the City's justification for her firing was false and (2) discrimination was the real reason for her termination.  *See Brooks*, 446 F.3d at 1163.

### 1.  *Plaintiff cannot show the City's basis for her termination was false*

Because the City's basis for Plaintiff's termination is her violation of work rules, Plaintiff can only demonstrate the City's reason is false in one of two ways.  Plaintiff must show she did not violate the work rules or, if she did, that other employees outside her protected class engaged in similar acts but were not similarly treated.  *See Shi*, 679 F. App'x at 833 (citing *Sparks*, 830 F.2d at 1563).  As explained below, the record is clear that Plaintiff violated the chain of command. And while issues of fact persist regarding Plaintiff's conduct during the City's internal investigation, her termination based upon a mistaken—but honest—belief that she lied during the investigation further dispels the presence of pretext.  Lastly, assuming Plaintiff did violate work rules, she fails to provide similarly situated comparators and is therefore unable to demonstrate disparate treatment.  The Court will address each point in turn.

### a.  *Violation of the chain of command*

As a starting point, Plaintiff contends that she did not violate the chain of command because she did not request to meet with the City Manager or request anything from him.  Resp. at 9. Plaintiff maintains Deputy Chief Garcia testified that "to violate the chain of command rule, the

employee must make a request." Resp. at 9.  However, the deposition testimony cited by Plaintiff does not support that contention.  *See* PSMOF ¶ 77.  In that portion of his deposition, Deputy Chief Garcia was testifying specifically about Rule 4.10.  Garcia Dep. 56:22–58:1–2.  Rule 4.10 pertains to how a Fire Department employee should request records or information of any type.  *Id.* at Ex. 10.  Deputy Chief Garcia explained that if Plaintiff were to make a request for information, that request would need to go through the proper chain of command.  *Id.* at 56:22–58:1–2.  Rule 4.10 does not stand for the proposition that one can only violate the chain of command by making a request.  Reply at 5–6.  Consequently, there is no support for Plaintiff's contention that she did not violate the chain of command.  In fact, the record supports a finding that she did.

Defendant explained that attending a meeting with the City Manager without the permission of a supervisor is a violation of the chain of command.  Mot. at 10; Reply at 6. Testimony by various Fire Department witnesses supports the City's argument.  Deputy Chief Garcia explained that "an approved leave would have to be approved through the chain – if we're talking about a fifteen-minute break or something like that and then you go to the City Manager's office without advising your supervisor then you're breaking all of the rules."  Garcia Dep. 110:5– 12.  Separately, Deputy Chief Miller stated that such behavior was "concerning – I think it would be concerning that a probationary employee would break the chain of command and go to the highest level of the city."  [ECF 48-5] ("Miller Dep.") 24:18–24.  Deputy Chief Miller further noted that "regardless of what they spoke about, I – I find it concerning that a probationary employee would break chain of command and go to the highest level of our city; very concerning." *Id*. at 25:15–20.  In fact, he explains that, for a probationary employee, violating the chain of command could be a fireable offense.  *Id*. at 26:13–16.

In Plaintiff's case, the undisputed facts show the following. Plaintiff attended a twenty-minute meeting in the City Manager's office while on duty, in her Fire Department uniform. [ECF No. 56-1] ("Naraine Aff.") ¶¶ 18–21. She did not request permission from anyone in the Fire Department to attend the meeting, nor did she inform anybody in the Fire Department that she was attending the meeting. DSMOF ¶ 28; *see also* Naraine Aff. ¶ 21. Plaintiff described the meeting as "private family business." Naraine Aff. ¶ 21. The meeting was related to her partner's appeal of his request for accommodations due to their childcare issues. *Id.* ¶ 23. It was the City Manager's impression that "both of them [Plaintiff and Nicholas Gasbarro] were asking for help during the meeting." Ishmael Dep. at 31:4–5. After the meeting, Plaintiff's partner, Nicholas Gasbarro, followed up via e-mail to the City Manager. [ECF No. 48-10] at 9. He wrote, "Words cannot express my heartfelt gratitude and appreciation to you for taking the time to meet with myself and Cindy, **giving us the opportunity to discuss the hardship we as a family** and employees of the city have been facing." *Id*. (emphasis added). Even construing all facts in the light most favorable to Plaintiff, it is clear that she participated in an unapproved meeting with the City Manager to discuss childcare accommodations.

In *Griffin v. City of Demorest*, the Eleventh Circuit affirmed summary judgment in favor of the City and against a terminated police commander who violated his chain of command by speaking to a city councilmember. 635 F. App'x 701, 707 (11th Cir. 2015). Similar to Plaintiff, the terminated police commander in *Griffin* argued that he did not initiate the conversation with the city councilmember. *Id*. The Court accepted that the terminated policy commander did not initiate the conversation, but still found that he violated the chain of command by having the conversation at all. *Id*. As in *Griffin*, the Court accepts as true that Plaintiff did not initiate the meeting with the City Manager and did not request an accommodation to her own work schedule.

However, that does not change the fact that Plaintiff participated in an unapproved meeting with the City Manager in violation of the chain of command.  Moreover, the Eleventh Circuit has described the "chain of command" as a "neutral policy", finding that there is "nothing inherently discriminatory about a policy that requires employees to respect corporate hierarchy, and we are not in the business of determining, without more, whether facially legitimate company practices are subtly linked to ethnic or racial groups." *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018).  Here, Plaintiff cannot establish she did not violate the chain of command—a nondiscriminatory work policy.[7]

### b. *Plaintiff's conduct during the internal investigation*

Next, the Court turns to Plaintiff's contention that she did not lie about attending the meeting with the City Manager, and therefore, did not violate any work rules surrounding truthfulness in internal investigations.  Resp. at 9.  Plaintiff argues she did tell Deputy Chief Garcia that she attended the City Manager's meeting.  *Id.*  She cites to one exchange in Deputy Chief Garcia's deposition for support.  PSOMF ¶ 88.  However, this exchange is hotly contested.  *See*

---

[7]  Furthermore, while not briefed extensively in the Motion, Chief Jurado considered Plaintiff's ongoing contact with the Hollywood Professional Fire Fighters Local # 1375 ("Union") and the Human Resources Department to be violative of the chain of command.  Jurado Dec. ¶¶ 5–6; *see also* DSOMF ¶ 47.  At the commencement of her employment, Plaintiff raised issues regarding her benefits and seniority to the Union and the Human Resources Department.  *Id.*  After Plaintiff received an answer, she continued to direct the same questions to the Human Resources Department.  *Id.*  Chief Jurado felt the continuing nature of those questions was violative of the chain of command.  *Id.*  When Chief Jurado met with Kathy Lopez-Negron (a Human Resources Manager) regarding Plaintiff's termination, he described this conduct as violating the chain of command and as another reason for her termination.  [ECF No. 48-2] ("Lopez-Negron Dep.") at 20:13–19.  Lopez-Negron testified, "It was one of the things that he had mentioned.  It was – typically in the fire department it's paramilitary, so anybody who has questions, they go up the chain.  And in her case, she was going either to the fire union, who was then coming to the fire chief, or to HR to ask questions, or she was sending emails that the City had already looked into.  Nothing had changed [from the initial time Plaintiff had asked these same questions]."  *Id.*  Importantly, Chief Jurado advanced this as a reason for Plaintiff's termination in his meeting with the Deputy City Attorney, Lopez-Negron, and Tammie Hechler (Human Resources Director for the City).  *Id.* at 101:12–102:19.

DSMOF ¶ 88.[8]  Ultimately, whether Plaintiff lied to Deputy Chief Garcia about her attendance at the meeting with the City Manager is a genuine issue of material fact.  Therefore, the Court cannot determine whether Plaintiff made false representations during the City's internal investigation.

Even assuming Plaintiff did not lie during her internal investigation, the Court must still assess whether Plaintiff was terminated on a mistaken—but honest—belief that she *did* lie during her internal investigation.  "When an employer asserts misconduct by an employee as the legitimate reason for its action, the pretext inquiry focuses on the employer's beliefs and whether the employer was dissatisfied with the employee for nondiscriminatory reasons, 'even if mistakenly or unfairly so.'"  *Siddiqui v. NetJets Aviation, Inc.*, 773 F. App'x 562, 564 (11th Cir. 2019) (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting the inquiry is not whether the employee was indeed guilty of misconduct but whether the employer in good faith believed so, and whether this belief was the reason for the termination).  "Thus, for example, where an employer relies on an underling's report that the plaintiff committed the work rule violation in question and fires him on that basis, the plaintiff is unable to demonstrate pretext merely by showing that the report is false."  *Strickland v. Prime Care of Dothan*, 108 F. Supp. 2d 1329, 1333 (M.D. Ala. 2000) (citing *Elrod,* 939 F.2d at 1469 (holding that such facts do not establish pretext) (citations omitted)).

Here, the evidence is undisputed that Deputy Chief Garcia told Chief Jurado that Plaintiff lied to him by denying her attendance at the meeting.  [ECF No. 48-3] ("Jurado Dec.") ¶ 9.[9]  In

---

[8]  *Compare* [ECF No. 48-1] ("Naraine Dep.") at 57:9–13; *with* ("Naraine Aff.") ¶ 17; *see also* DSOMF ¶ 88.

[9]  In Plaintiff's Statement of Material Facts, she states that "Garcia and Jurado both knew that Plaintiff did not lie about attending the meeting, but Jurado and Garcia misrepresented this fact in documents and to HR, and to legal."  PSOMF ¶ 44.  In support of that statement, she points to ¶ 39 of her Statement of Material

making his recommendation to terminate Plaintiff, Chief Jurado believed that Plaintiff had made false statements in connection with Deputy Chief Garcia's internal investigation. *See* Jurado Dec. ¶ 11. His belief is further reflected in his communications with Deputy City Manager Keller and City Manager Ishmael prior to Plaintiff's termination. DSOMF ¶ 45. In a meeting with both, Chief Jurado stated he was recommending Plaintiff's termination due to her chain of command violations, and, among other things, cooperation issues. Ishmael Dep. at 27:3–18. Accordingly, even if Plaintiff did not lie in connection with Deputy Chief Garcia's investigation, it is clear Chief Jurado believed that she did—and he relied on that belief in terminating Plaintiff.

### c. *Plaintiff fails to identify suitable comparators who were treated more favorably than Plaintiff*

To be clear, Plaintiff maintains that she did not violate workplace rules. However, even if she did, she argues that other employees outside her protected class who engaged in similar acts were not similarly treated. *Shi*, 679 F. App'x at 833. Plaintiff purports to identify two suitable comparators: Alexander Pintovidal and Jon Duchrow. *Id.*

The Court must first determine whether either are suitable comparators. *See Lewis*, 918 F.3d at 1224. In *Lewis*, the Eleventh Circuit explained that similarly situated employees must be "similarly situated in all material respects." *Id.* at 1231. This analysis turns "not on formal labels, but rather on substantive likeness." *Id.* at 1228. Relevant factors include, but are not limited to, whether the individual: (1) engaged in the same basic conduct as the plaintiff; (2) was subject to the same employment policy, guideline, or rule as the plaintiff; (3) was under the jurisdiction of the same supervisor as the plaintiff; and (4) shared the plaintiff's employment or disciplinary history. *Id.* at 1227–28. "If a plaintiff alleges he was disciplined in a discriminatory manner

---

Facts, citing to Deputy Chief Garcia's disputed deposition testimony. This citation provides no support for Plaintiff's statement that Chief Jurado also knew Plaintiff did not lie about attending the meeting.

compared to a similarly-situated employee, he must show that the other employee engaged in nearly identical misconduct, so that courts do not second-guess employers' reasonable decisions or confuse apples with oranges." *Shi*, 679 F. App'x at 832.

Plaintiff maintains that Pintovidal, a white male who violated Fire Department Rules and Regulations, was treated more favorably than Plaintiff because, unlike Plaintiff, Pintovidal received an explanation for his termination. Pintovidal was terminated during his probationary period for violations of Rules 5.1 (Conduct Unbecoming), 12.5 (Uniform Conduct – Off Duty in Uniform), 5.8 (Courtesy), 8.1.7 (Incompetence), and 5.6 (Improper Conduct of the City of Hollywood Rules and Regulations). *See* [ECF No. 56-7] at 36. However, while Pintovidal and Plaintiff both violated Fire Department Rules and Regulations generally, they did not violate the *same* rules and regulations.[10] Importantly, Pintovidal's infractions did not involve violating the chain of command or making any alleged false statements to superiors. Further, Plaintiff and Pintovidal were not terminated by the same Fire Chief.[11] Thus, Pintovidal and Plaintiff are not "similarly situated in all material respects." The fact Pintovidal may have received an explanation for his termination is of no moment because he is not a suitable comparator.

Next, Plaintiff contends that Jon Duchrow is a suitable comparator. Resp. at 11. However, Duchrow is not an employee who violated a work rule and was subsequently treated more favorably than Plaintiff. Duchrow is a white male who replaced Plaintiff in November 2020. City Resp. Add't Facts ¶ 73. Therefore, Duchrow is not a suitable comparator for purposes of pretext.

---

[10] Fire Department Rules and Regulations 1.3 (Chain of Command), 2.1 (General), 4.10 (Requested Materials), 5.3 (Being Truthful) and 5.4 (Relating Statements). [ECF No. 56-2] at 89.

[11] Pintovidal was terminated by Former Fire Chief Javier Hernandez—not Chief Jurado. [ECF No. 56-7] at 36–37.

In sum, Plaintiff fails to identify suitable comparators who engaged in similar acts and were treated more favorably as required by the *McDonnell Douglas* framework.

### 2. *Plaintiff fails to show that discrimination was the "real reason" for her termination*

To establish pretext, Plaintiff must show not only that the City's purported reasons for her termination were false, but that the real reasons for her termination were discriminatory. *Brooks*, 446 F.3d at 1163. Plaintiff highlights certain conduct she believes to be indicative of race or sex discrimination. Resp. at 7, 13. The Court will address each purported example individually.[12]

Plaintiff argues that Deputy Chief Garcia called her a "sweet lady" during his deposition testimony about whether race or gender was an issue in Plaintiff's termination. Resp. at 7. Upon review of the deposition testimony at issue, Deputy Chief Garcia discusses how he was uncomfortable firing Plaintiff because she was a "sweet lady" who he had heard "great things" about, and he regretted that "[we] were in [that] situation." Garcia Dep. at 144:9–25. There was no mention of race or gender. In fact, Deputy Chief Garcia discussed how he had encouraged Plaintiff during her training at the Fire Department. *Id.* Based on that testimony, the Court cannot infer that Deputy Chief Garcia's reference to Plaintiff as a "sweet lady" is indicative of any discriminatory animus based on her sex or gender.

Next, Plaintiff states that Deputy Chief Garcia called another female firefighter a "sweet young lady" when discussing her choice to leave the Fire Department because "she wanted to take care of her kids." Resp at. 7. During this testimony, Deputy Chief Garcia explained that the female

---

[12] Throughout her pleadings, Plaintiff interchangeably refers to sex and race discrimination despite the marked differences between the two. For example, the only evidence Plaintiff advances related to race discrimination is the fact that her purported comparators are white, as well as one out of context remark by Chief Jurado regarding the culture of the Fire Department. All remaining evidence put forth by Plaintiff relates to her claim of sex discrimination.

firefighter was a "sweet young lady, new mother" but that her supervisor had seen a "lack of understanding of her duties." Garcia Dep. 120:11–20. He went on to state that "we [meaning the Fire Department] wanted her to get better, so we started her on a PIP [performance improvement plan]." *Id.* Deputy Chief Garcia explained how, on the female firefighter's first day back from maternity leave, she was upset, and he encouraged her to have her husband and baby come visit her to "make her feel better." *Id.* at 122:5–22. He wanted to help her and felt that a performance improvement plan was a way to do that. *Id.* at 122:18–22. The notion that this exchange is representative of sex discrimination is nonsensical. The testimony shows that the Fire Department wanted the female firefighter to stay on and offered to put her on a performance plan to enable her to do so. Further, even if such a comment had been made by Deputy Chief Garcia, "an isolated comment, unrelated to the decision to fire [Plaintiff], is, alone, insufficient to establish a material fact on pretext." *Jones v. Ga. Ports Auth.*, No. 4:20-CV-315, 2022 WL 2990908, at *10 (S.D. Ga. July 28, 2022) (citing *Thomas v. Dolgencorp, LLC*, 645 F. App'x 948, 951 (11th Cir. 2016)).

Plaintiff next states that Deputy Chief Garcia admitted the culture of the Fire Department is white male. Resp. at 7. But upon review of the referenced testimony, Plaintiff's statement consists of an inaccurate representation. In the cited testimony, Deputy Chief Garcia explains that, for historical and cultural reasons, the Fire Department had been predominantly white, but that is changing—specifically because "of the need for care, people having babies[.]". Garcia Dep. 114:14–25. In no way did he admit that the current culture "is white male."

Plaintiff also contends that Human Resources Manager Kathy Lopez-Negron made statements to Plaintiff's partner, Nicholas Gasbarro, that were indicative of a discriminatory culture at the City. Resp. at 7. Specifically, Plaintiff asserts that Lopez-Negron told Gasbarro that Plaintiff, as the mother, should request the childcare accommodations. *Id.* Assuming Lopez-

Negron did make that statement to Plaintiff's partner, Plaintiff was not fired for requesting childcare accommodations. Plaintiff was fired for, at a minimum, violating the chain of command. This purported statement by Lopez-Negron lacks any connection to Plaintiff's termination and is insufficient to establish pretext.

Lastly, Plaintiff contends Deputy Chief Garcia testified that Plaintiff should have resigned if she had childcare issues. Resp. at 7. While Plaintiff fails to support that statement with a proper citation to the record, *see* PSOMF ¶ 86, the Court has reviewed the entirety of Deputy Chief Garcia's deposition to verify the veracity of this assertion. In his deposition, Deputy Chief Garcia explained that because Naraine was in her first year as a firefighter, if she didn't pass probation, then she would be terminated. *Id*. at 68:19–22. At the end of that explanation, he stated, "or any time if she had problems with childcare she could have resigned." *Id*. at 24–25. Deputy Chief Garcia was therefore noting that the option to resign was always available to Plaintiff—as it would be to **any** probationary employee. He never stated that Plaintiff should have resigned if she had childcare issues. While Plaintiff might find such statement to be offensive, "absent additional detail linking the statement to Plaintiff's sex, it does not plausibly suggest a discriminatory motive." *See Pompey-Primus v. Success Acad. Charter Schs.*, *Inc.*, No. 21-CV-3891, 2021 WL 504541, at *7 (S.D.N.Y. Feb. 17, 2022).

Importantly, the Court notes the following undisputed facts. Plaintiff never witnessed any act of discrimination against any employee of the Fire Department. DSMOF ¶ 61. Plaintiff was never subject to a racist remark while working at the Fire Department. *Id*. ¶ 62. Nobody ever said anything disparaging to Plaintiff based on her race. *Id*. Plaintiff was never the subject of a sexist comment while working at the Fire Department. *Id*. ¶ 63. Neither Chief Jurado nor Deputy Chief Garcia ever made a disparaging comment about Plaintiff. *Id*. ¶ 64. Neither Chief Jurado or Deputy

Chief Garcia ever discussed disciplining an employee for racial reasons.[13]  *Id*. ¶ 68.  In sum, the undisputed facts sharply undermine any notion that the "real" reason Plaintiff was fired was discriminatory in nature.  "Put frankly . . . employers are free to fire their employees for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'"  *See Siddiqui*, 773 F. App'x at 564.

Ultimately, Plaintiff is unable to establish pretext as required by *McDonnell Douglas* and its progeny.  The record does not indicate that the City's justification for firing her was false, nor that discrimination was the real reason for her termination.  Unable to establish pretext in this fashion, the Court turns to Plaintiff's alternative theory regarding a purported mosaic of discrimination.  *See* Resp. at 10.

### IV.  Plaintiff Cannot Establish a Convincing Mosaic of Discrimination

When the *McDonnell Douglas* path is foreclosed, a plaintiff may nevertheless survive summary judgment if she can "present[] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Johnson*, 858 F. App'x at 310.  Under the *Smith* framework, "a triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Id*. (alterations omitted).  A "convincing mosaic" is established by "pointing to evidence that demonstrates (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2)

---

[13] Plaintiff disputes this statement with statistics regarding the City's employment record of hiring practices. This response does not actually rebut the City's statement, and therefore the Court treats this fact as undisputed.  *See* S.D. Fla. L.R. 56.1(b)(2) ("If an opponent's Statement of Material Facts disputes a fact in the movant's Statement of Material Facts, then the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute.").

systematically better treatment of similarly-situated employees, and (3) pretext." *Johnson*, 858 F. App'x at 310 (internal citations omitted).

Based on the undisputed factual record, Plaintiff has not shown that a triable issue of fact exists by presenting a convincing mosaic of discrimination. "When undertaking a convincing mosaic analysis, the Court first considers whether [Defendant's] cited reasons for firing [Plaintiff] are merely a pretext for discrimination." *Grose v. Am. Airlines, Inc.*, No. 21-CV-81096, 2022 WL 2666640, at *7 (S.D. Fla. July 11, 2022) (citing *Key v. Cent. Ga. Kidney Specialists, P.C.*, No. 19-00253, 2020 WL 7053293, at *6 (M.D. Ga. Oct. 28, 2020)). The pretext inquiry requires Plaintiff to "demonstrate[ ] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (citing *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). Critically, though, "a reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* (citing *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)). Here, Plaintiff advances various arguments under her "convincing mosaic" theory. The Court will briefly address each one.

### 1. *Fabrication of documents*

Plaintiff contends that Deputy Chief Garcia was fabricating documents after her termination. PSOMF ¶ 92. Her support for that contention is a screenshot of a draft memo from Deputy Chief Garcia to Chief Jurado recommending that Plaintiff be terminated. [ECF No. 56-2] at 90. This document was allegedly modified on February 4, 2020—after Plaintiff's termination. PSOMF ¶ 92. Plaintiff argues that this modification creates an "inconsistent, contradictory, and implausible" explanation for her termination. Resp. at 10. The draft at issue recommends

Plaintiff's termination based on her violation of Fire Department Rules and Regulations 1.3, 2.1, 4.10, 5.3, and 5.4.  [ECF No. 56-2] at 89.  Exhibit 10 of Deputy Chief's Garcia deposition contains the final, signed recommendation letter for Plaintiff's termination, dated January 8, 2020.  [ECF No. 64-1] Ex. 10 at 210.  The final letter recommends Plaintiff's termination for violations of Fire Department Rules and Regulations 1.3, 2.1, 4.10, 5.3, and 5.4—reasons identical to those in the allegedly "fabricated document."  *Id*.  Therefore, any argument Plaintiff raises regarding the purported fabrication of termination documents does not offer an inconsistent or implausible explanation for her termination—and does not establish a "convincing mosaic" theory.

### 2. *Deviation from policy*[14]

Plaintiff contends the City deviated from policy when it failed to provide her with a reason for her termination.  However, Plaintiff was a probationary employee.  DSOMF ¶ 49.  She could be terminated for any reason.  *Id*.[15]  Moreover, Deputy Chief Garcia told Plaintiff she was not a good fit for the department.  This is wholly in line with the City's articulated bases for her termination.  As Defendant writes, "employees who break workplace rules are not a good fit for their employers."  Reply at 9.

---

[14]  In this section of the Response, Plaintiff also contends that the City's failure to return Plaintiff to her prior role in the IT Department was a deviation from the civil service code—a deviation indicative of pretext. Resp. at 10. Even assuming Plaintiff's understanding of the policy is correct (which is vehemently disputed throughout the pleadings), there is no evidence that Plaintiff ever asked to return to her former position. Without such a request, the Court cannot deem the City's failure to reappoint Plaintiff to her former position discriminatory. Reply at 8.

[15]  Plaintiff alleges that this is a disputed fact. PSOMF ¶ 49. However, Plaintiff's response does not actually rebut the City's statement, and therefore the Court treats this fact as undisputed. *See* S.D. Fla. L.R. 56.1(b)(2) ("If an opponent's Statement of Material Facts disputes a fact in the movant's Statement of Material Facts, then the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute."); *see also* S.D. Fla. L.R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.").

### 3. *Timing of termination*

Plaintiff argues that the timing of her termination was suspicious. Resp. at 11. To support this argument, she states that the Chief "had 10 weeks to investigate the meeting [with the City Manager] but much of the documentation is created after the Plaintiff's termination." *Id.* However, this assertion is not supported by the record evidence. The documentation created at the time of Plaintiff's termination is consistent with the evidence Plaintiff purports was created after her termination. *Compare* PSOMF ¶ 92, DSOMF ¶ 92. The fact approximately ten weeks elapsed between Plaintiff's meeting with the City Manager and her ultimate termination constitutes no more than a "scintilla" of evidence supporting pretext. *See Jackson v. Agency for Pers. with Disabilities Fla.*, 608 F. App'x 740, 743 (11th Cir. 2015) (finding that a long investigative process may have reflected an intent by the investigating body to make a careful and fully informed decision about whether to discipline plaintiff for her involvement in the incident).

In sum, Plaintiff fails to present a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the City. Thus, the Court turns to Plaintiff's final set of claims—three counts of retaliation under Title VII, § 1983, and the FCRA.

## V. Title VII, § 1983, and FCRA Retaliation[16]

Plaintiff pleads three counts of retaliation due to the City's failure to rehire her for the position Plaintiff was terminated from. *See* Compl. ¶¶ 22–28, 85, 93, 114. However, in Plaintiff's Response, she alleges, for the first time, that the City engaged in a second retaliatory act when the

---

[16] The same standard used to assess a retaliation claim under Title VII guides the analysis of claims under the Florida Civil Rights Act. *See Harper v. Blockbuster Ent. Corp.*, 139 F. 3d 1385, 1389 (11th Cir. 1998). Moreover, the basis of Plaintiff's § 1983 retaliation claim is an alleged violation of § 1981, which itself prohibits an employer from retaliating against its employee as a response to the employee's complaint of race-based discrimination. *See Adams v. Cobb Cnty. Sch. Dist.*, 242 F. App'x 616, 620 (11th Cir. 2007) (citing *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412–13 (11th Cir. 1998)). The elements of a retaliation claim are the same under § 1981 and Title VII. *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212–13 (11th Cir. 2008).

City told the City of Coral Gables that it had deemed Plaintiff ineligible for rehire.  Reply at 10.

Federal Rule of Civil Procedure 8(a) does not afford an opportunity to raise new claims at the

summary judgment stage.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th

Cir. 2004).  At the summary judgment stage, the proper procedure for plaintiffs to assert a new

claim is to amend the complaint in accordance with Federal Rule of Civil Procedure 15(a); a

plaintiff may not amend its complaint through argument in a brief opposing summary judgment.

*Id*. (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).  Accordingly, the Court

will not allow Plaintiff to assert a brand-new theory of liability over a year after the deadline for

amending pleadings, and will only address whether the City retaliated against Plaintiff when they

failed to rehire her for the same position.[17]  *See Smith v. Carnival Corp.*, No. 19-24352, 2021 WL

5327944, at *3 (S.D. Fla. Nov. 16, 2021) (finding Plaintiff's attempt to allege vicarious liability

was untimely and prejudicial after the close of discovery and the deadline for amending the

pleadings).

In addition to prohibiting discrimination, Title VII prohibits retaliation against an employee

for the employee's opposition to "any practice made an unlawful employment practice by Title

---

[17]  Even if the Court were to consider Plaintiff's additional theory of retaliation, it would still fail.
Conceding that Plaintiff has put forth a *prima facie* case of retaliation, the Court turns to Defendant's
justification for its actions.  In September 2020, the City of Coral Gables sent the City a verification of
employment inquiry asking if Plaintiff was "eligible for rehire."  PSMOF ¶ 91.  The City responded that
Plaintiff was not eligible for rehire.  *Id*.  The City concedes it does not normally answer that question—but
in this case, Plaintiff had reapplied for the very same position in the Fire Department that she had just been
terminated from, which was very abnormal.  Reply at 11; Hechler Dep. 106:1–9 ("I've never had that
happen in my entire career.").  Accordingly, the City had deemed Plaintiff ineligible to rehire.  *Id*.  The
City's proffered reason for providing that answer to the City of Coral Gables is because it was the honest
answer.  *Id*.  The City had deemed Plaintiff ineligible to rehire due to her termination for work rule
violations.  *Id*.  Plaintiff points to no specific evidence that the City's asserted justification was false, nor
that discrimination was the real reason the City provided that answer.  *See* Resp. at 15; *see also Castillo v.
Roche Lab'ys, Inc*., 467 F. App'x 859, 863 (11th Cir. 2012) ("Conclusory allegations of discrimination or
retaliation, without more, are insufficient to carry the plaintiff's burden.").  Moreover, the City's answer to
the City of Coral Gables' employment verification letter—that Plaintiff had been deemed ineligible to
rehire—is wholly consistent with the City's decision not to rehire Plaintiff.  Hechler Dep. 106:9–14.

VII." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing 42 U.S.C. § 2000e–3(a)). As with Title VII discrimination claims, courts "analyze retaliation claims that are based on circumstantial evidence according to the *McDonnell Douglas* burden shifting framework." *Smelter*, 904 F.3d at 1293. A plaintiff must establish a *prima facie* case of retaliation, which shifts the burden to the defendant "to produce legitimate reasons for the adverse employment action[,]" and, "[i]f the defendant does so, the plaintiff must show that the reasons the defendant gave were pretextual." *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (citation and internal quotations omitted). "To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (citation and internal quotations omitted). Defendant concedes that Plaintiff has established a *prima facie* case of retaliation. Reply at 17. The burden now shifts to Defendant to "to produce legitimate reasons for the adverse employment action[.]" *See Shannon*, 292 F.3d at 715.

Here, the materially adverse action at issue is the City's failure to rehire Plaintiff after she reapplied for the same position from which she was terminated. Mot. at 17–18. Defendant explains that its reasons for failing to rehire Plaintiff were the same as its reasons for terminating Plaintiff—her violation of workplace rules. *Id*. at 18. As explained previously, these are legitimate, non-discriminatory reasons to refuse to rehire Plaintiff. *See supra* 22. Because Defendant has articulated legitimate, non-discriminatory reasons for the challenged action, the burden shifts back to Plaintiff to demonstrate that the proffered reasons were merely pretextual. *See Atchison v. Bd. of Regents of Univ. Sys. of Ga.*, 802 F. App'x 495, 503 (11th Cir. 2020). Plaintiff must come back with specific evidence demonstrating that the reasons given by the

prospective employer were a pretext for discrimination.  *See Cooper v. Atlanta Bd. of Educ.*, No. 04-CV-861, 2005 WL 8154712, *14 (N.D. Ga. Nov. 21, 2005).

Again, Plaintiff fails to show that Defendant's reasons for failing to rehire her were pretextual.  She offers no evidence that she either (1) did not violate the workplace rules or (2) if she did, that a suitable comparator was treated more favorably.  And courts have found that an employer has "presented legally sufficient evidence of a legitimate, non-discriminatory reason for its decision not to re-employ the [p]laintiff because of her previous termination for cause."  *See Cooper*, 2005 WL 8154712 at *13; *see also Atchison*, 802 F. App'x at 504–05.

Plaintiff seems to argue that the length of time her application was pending before the City—seven months—is indicative of pretext.  Resp. at 15.  However, Plaintiff carries the burden of "producing significant probative evidence of pretext."  *See Castillo*, 467 F. App'x at 863.  The amount of time Plaintiff's application remained pending is but a "mere scintilla" of evidence, insufficient to support a showing that a jury could reasonably find for Plaintiff.  Moreover, Human Resources Director Tammie Hechler testified that while the average time for recruitment in the City is three months, it can take as long as twelve months.  Hechler Dep. 112:9–12.  Given this testimony, a pending application time of seven months does not indicate discriminatory animus.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 49] is **GRANTED** as to all remaining counts.  All other pending motions are **DENIED as MOOT**.  Final judgment will be entered by separate order.  The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of August, 2022.

RODOLFO A. RUIZ II
**UNITED STATES DISTRICT JUDGE**